**Thomas CLARK and Nancy Clark, Plaintiffs,**

v.

**Edgar SIMS, Jr., Jeanette I. Sims, General Partners of KDCA Partnership, a Maryland General Partnership, et al., Defendants.**

Civ. No. N–89–1577.

United States District Court, D. Maryland.

June 23, 1995.

Joseph M. Sellers, John P. Relman, Washington Lawyers' Committee for Civil Rights Under Law; Elizabeth T. Jester, James E. Williams, Jester & Williams, Washington, DC, for plaintiffs.

Michael P. Broderick, Donovan, O'Connell & Broderick, Silver Spring, MD, for defendants.

*MEMORANDUM*

NORTHROP, Senior District Judge.

On July 5, 1994, the Fourth Circuit for the United States Court of Appeals remanded the case *sub judice* to this Court for reconsideration of Plaintiffs' Motion for Attorney's Fees filed pursuant to 42 U.S.C. § 1988. *Clark v. Sims*, 28 F.3d 420 (4th Cir.1994).[1] The Court now reconsiders Plaintiffs' Motion for Attorney's Fees and Defendants' Response in light of the Fourth Circuit's remand and the progeny of *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). *Id.* at 424–25. Previously, this Court held a hearing on Plaintiffs' Motion for Attorney's Fees on March 23, 1992; no further hearing is necessary. Local Rule 105.6 (D. Md.1992, as amended 1994). For the reasons set forth below, Plaintiffs' Motion for Attorney's Fees will be granted in part. Plaintiffs will be awarded fees of $24,511.09.

### I. BACKGROUND

On July 5, 1988, Plaintiffs, an African American couple, were denied lodging at the Best Western Maryland Inn (the "Inn") in College Park, Maryland which was operated by Defendant Maryland Hospitality, Inc. At that time, the desk clerk informed the locally based couple that the motel did not rent rooms to local residents. Feeling skeptical as to this explanation, Plaintiffs filed a complaint with the Prince George's County Human Relations Commission ("HRC") alleging that they had been discriminated against on the basis of their race.

Thereafter, two local HRC testers (one African American and one Caucasian) were treated differently by Defendants when they attempted to register at the Inn.[2] Based upon these incidents, the HRC found that there was evidence to support racial discrimination charges filed by Plaintiffs and subsequently, by the African American tester. On May 24, 1989, Plaintiffs filed suit in this Court pursuant to 42 U.S.C. § 2000a (denial of right to equal enjoyment of facilities) and 42 U.S.C. § 1981 (denial of right to make and enforce contracts).[3] The relief sought by their Amended Complaint included: (i) a declaratory judgment that Defendants had violated §§ 1981 and 2000a; (ii) a permanent injunction barring Defendants from further engaging in said discriminatory conduct; (iii) a permanent injunction directing Defendants to take affirmative efforts to remedy the effects of their discriminatory conduct; (iv) unspecified compensatory and punitive damages "as would fully compensate each Plaintiff for the economic loss, humiliation and emotional distress caused by Defendants' [conduct] ..." and (v) attorney's fees and costs.[4]

A jury trial on Plaintiffs' § 1981 claim commenced on October 29, 1990. At the end of Plaintiffs' case, the Court directed a verdict for all Defendants[5] on Plaintiffs' claim for punitive damages; Defendants' Motion for Directed Verdict was twice denied as to the remaining claims. On November 2, 1990, the jury found that Defendant Maryland Hospitality, Inc. had denied Plaintiffs lodging on the basis of their race in violation of 42 U.S.C. § 1981 (Count II) and awarded Plaintiffs compensatory damages of one dollar.[6] On March 15, 1991, this Court entered judgment in Defendants' favor as to Count I, denied Plaintiffs' Motion for Permanent In-

---

1. Essentially, the Fourth Circuit determined that an informal settlement offer presented by Defendants to Plaintiffs prior to trial did not constitute a formal offer of judgment as defined by Fed. R.Civ.P. 68. Because this Court's calculation of fees had been based in part upon the informal offer of settlement, the *Clark* Court remanded for a redetermination as to a reasonable fee award.

2. The African American was denied a room based upon the "no locals" policy while the Caucasian tester was permitted to register.

3. Although the African American tester reached an agreement of conciliation with Defendants, Plaintiffs were unable to do so. *See* Defendants' Opposition, Exhibit 9. Plaintiffs filed suit in this Court prior to concluding their conciliation talks with Defendants.

4. Amended Complaint at ¶ 27(d).

5. Prior to the onset of trial, Plaintiffs orally dismissed their claims against Defendant Andrew Sims and proceeded against Defendants Edgar Sims, Jr., Jeanette Sims and Maryland Hospitality, Inc.

6. The jury found in favor of the remaining individual Defendants.

junction and denied Defendants' Motion for Judgment Notwithstanding the Verdict as to Count II.[7] It is noteworthy that just prior to the initial filing of Plaintiffs' Complaint, Defendants voluntarily suspended any further implementation of their "no locals" policy as part of the conciliation agreement entered into with the African American tester. The Court credits Plaintiffs' assertion, however, that they were unaware of this settlement until May 1991.[8]

Thereafter, Plaintiffs filed their Motion and Supplemental Motion for Attorney's Fees pursuant to 42 U.S.C. § 1988, seeking $122,555.46 in fees and expenses for 836.36 hours expended by counsel from February 1989 to August 1992. Defendants responded that Plaintiffs' claims were, *inter alia,* unreasonable.[9] On September 30, 1992, this Court found that Plaintiffs were prevailing parties and were entitled to a recovery of fees.[10] The Court, however, limited Plaintiffs' fee award under Fed.R.Civ.P. 68 to those hours expended prior to October 20, 1989, the date upon which Defendants' informal settlement offer would have been known to Plaintiffs. As noted *supra,* the Fourth Circuit determined that Rule 68 cannot be applied to the informal settlement offer made in this case. *Clark v. Sims,* 28 F.3d at 424. The Court now reconsiders Plaintiff's Motion for Attorney's Fees.[11]

## II. *DISCUSSION*

### A. Standard of Review

■ Under section 1988 "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Attorney's fees are often awarded in discrimination actions in order to encourage individuals thereby injured to seek judicial relief for themselves and the public. *See Texas State Teachers*

*Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989) (observing that in enacting § 1988, Congress intended to encourage plaintiffs to act as private attorney generals); *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 401–02, 88 S.Ct. 964, 965, 19 L.Ed.2d 1263 (1968). "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986).

■ Section 1988 has been interpreted to mean that prevailing plaintiffs in civil rights actions shall ordinarily receive fees and costs as long as no special circumstances render such an award unjust. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. at 402, 88 S.Ct. at 966. The district court has limited discretion in not awarding fees to a prevailing party. *Young v. Kenley,* 641 F.2d 192, 194 (4th Cir.1981), *cert. denied subnom. Long v. Bonnes,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982). Nonetheless, in cases such as this one, where only nominal damages are awarded, the reasonableness of the fee award is dependent upon, *inter alia,* the degree of success obtained. *Farrar,* —— U.S. at ——, 113 S.Ct. at 574, citing *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

### B. Analysis

■ The Fourth Circuit has left no question that having received nominal damages on their § 1981 claim, Plaintiffs are prevailing parties. *Clark,* 28 F.3d at 424. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that

---

7. *Clark v. Sims,* Civil Action No. N–89–1577, Memorandum and Order (D.Md. Mar. 15, 1991).

8. *See* Plaintiffs' Reply at 2 n. 4.

9. Defendants also argued that Plaintiffs were not prevailing parties and therefore were not entitled to a fee award. This issue was resolved by the Fourth Circuit in *Clark v. Sims,* 28 F.3d at 424.

10. *Clark v. Sims,* Civil Action No. N–89–1577, Memorandum (D.Md. Sept. 15, 1991).

11. Incorporated into today's analysis is the Court's review of the parties' arguments as set forth in its Memorandum and Order of September 30, 1992. *Clark v. Sims,* Civil Action No. N–89–1577, Memorandum (D.Md. Sept. 30, 1992). The Court will not revisit said arguments except where pertinent to today's Memorandum.

directly benefits the plaintiff." *Farrar*, —— U.S. at ——, 113 S.Ct. at 573. This Court thus turns to consider whether an award of fees is reasonable under the circumstances of the nominal fee award.

In remanding this case, the Fourth Circuit furnished the Court with several guiding principles for determining a suitable fee award. The *Clark* Court first emphasized that

> "the appropriate size of [Plaintiffs'] fee award is directly affected by the limited nature of their judgment. 'Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"

*Id.*, 28 F.3d at 424–25 (quoting *Farrar*, —— U.S. at ——, 113 S.Ct. at 574 (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941). The Fourth Circuit then noted that under *Farrar*, this Court was not required to engage in a traditional twelve factor "reasonableness" analysis[12] in order to calculate the award. *Clark*, 28 F.3d at 425.

Finally, the Fourth Circuit directed that this Court's calculation of the appropriate fee award should follow the approach taken towards catalyst theory in the recent case of *S–1 & S–2 v. State Board of Educ.*, 21 F.3d 49 (4th Cir.1994) (*en banc*), *cert. denied*, —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994), *rev'g S–1 by and through P–1 v. State Bd. of Educ. of N.C.*, 6 F.3d 160, 168–72 (4th Cir.1993). *Clark*, 28 F.3d at 425. The *Clark* Panel noted generally that *S–1 & S–2* prohibits a district court from "apply[ing] catalyst theory in determining what results are attributable to litigation." *Id.* It then construed *S–1 & S–2* as holding under *Farrar* that "only those changes in a defendant's conduct which are mandated by a judgment, consent degree, or settlement in the case at bar may be considered by the court in determining the plaintiff's success at trial." *Id.* More specifically, this Court was instructed that it could not find that the suspension of

Defendants' "no locals" policy occurred as "a result of the Clarks' action" because it "was not the result of any judgment, consent decree or settlement in this case." *Id.*[13]

This Court finds, however, that *S–1 & S–2* is distinguishable from the case *sub judice*. In *S–1 & S–2*, the plaintiffs were held not to be prevailing parties because the Fourth Circuit found that under *Farrar*, catalyst theory was no longer available to establish prevailing party status. *Id.* at 51[14] Because the *S–1 & S–2* plaintiffs did not meet the initial threshold of prevailing party status, the court did not engage in any secondary analysis with respect to calculating an appropriate fee award and the effect thereupon, if any, of catalyst theory.

In this case, Plaintiffs do not invoke an application of catalyst theory to reach prevailing party status. That status was specifically conferred upon them by the *Clark* Court. Instead, Plaintiffs lay claim to catalyst theory as it applies to demonstrate the "degree of success" obtained in their lawsuit. Plaintiffs have already accomplished a change in the Defendants' conduct; they now must show the reach of that success in order to justify any fee award in light of their nominal damages. It is in evaluating the results achieved by Plaintiffs' "success" that this secondary application of catalyst theory comes into play.

Although, the *Clark* Panel suggests that *S–1 & S–2* stands for a total elimination of catalyst theory *per se*, it appears that *S–1 & S–2* addresses only the more limited issue of how to establish prevailing party status. *See S–1 & S–2*, 21 F.3d at 51 ("The fact that a lawsuit may operate as a catalyst for postlitigation changes in a defendant's conduct cannot suffice to *establish plaintiff as a prevailing party*.") (emphasis added). This conclusion is bolstered by the Fourth Circuit's seemingly modified interpretation of *S–1 &*

---

12. *See, e.g., Hensley*, 461 U.S. at 430, 103 S.Ct. at 1938; *see also Barber v. Kimbrell*, 577 F.2d 216, 226 n. 28 (4th Cir.1978); *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).

13. As noted *supra*, the suspension of the "no locals" policy occurred pursuant to a concilia-

tion agreement made between the African American tester and Defendants. Plaintiffs were not a party to this agreement and were unable to arrive at a similar arrangement with Defendants.

14. *But see S–1 by and through P–1*, 6 F.3d at 167, n. 3.

*S–2* in the more recent case of *Arvinger v. Mayor and City Council of Baltimore,* 31 F.3d 196 (4th Cir.1994) ("In *S–1 & S–2,* we held that a catalyst theory was not appropriate in determining prevailing party status under 42 U.S.C. § 1988 ...").[15]

■ It is the opinion of this Court, that once a party has been *otherwise* found to be a prevailing party, catalyst theory remains available for consideration as a factor in arriving at the actual amount of the fee award, if any. *See Kilgour,* 53 F.3d at 1011 n. 4 ("A catalyst-type analysis can also factor into determining the extent of success ... [and therein] 'the reasonableness of a fee award.' ") (quoting *Farrar,* — U.S. at —, 113 S.Ct. at 574). This secondary application of catalyst theory was not specifically prohibited by either *S–1 & S–2* or *Farrar.* Moreover, the Court believes that this type of expanded deliberation becomes increasingly necessary in cases such as this where a plaintiff's lawsuit results in significant benefits to the public at large. *See Wilcox v. City of Reno,* 42 F.3d 550, 555 (9th Cir.1994) ("If the lawsuit achieved other tangible results—such as sparking a change in policy ...—such results will, in combination with an enforceable judgment for a nominal sum, support an award of fees"); *Koopman v. Water Dist. No. 1 of Johnson County, Kan.,* 41 F.3d 1417, 1421 (10th Cir.1994) (Assessing catalyst theory as it applies to reasonableness of award and distinguishing *Farrar* on the basis that plaintiff's victory in *Koopman* had significant implications for other public employ-ees, litigation was not protracted and damages claims were not extravagant).[16]

It can be argued further that Justice O'Connor did not eschew a similar application of catalyst theory in *Farrar* when her concurring opinion prescribed that a court's calculation of fees must entail consideration of "the relevant indicia of success." *Farrar,* — U.S. at —, 113 S.Ct. at 579. While finding that a nominal damages award often suggests nothing more than a technical victory, Justice O'Connor noted also that "[n]ominal relief does not necessarily a nominal victory make." *Id.* at —, 113 S.Ct. at 578. She thus suggested that a court's analysis of a plaintiff's success should encompass several factors: (i) the extent of the relief obtained, *i.e.,* the difference between the amount recovered and the damages sought; (ii) the significance of the legal issue(s) on which the plaintiff has prevailed; and (iii) the public purpose served by the plaintiff's victory. *Id.* at ——, 113 S.Ct. at 578–79. These factors, however, were not restricted by Justice O'Connor to being spawned from a judgment, consent decree or settlement in the case at bar, the majority opinion in *Farrar* notwithstanding. Instead, the use of catalyst theory in performing this analysis appears to be subsumed therein. Thus, it can be said that under *Farrar* and *S–1 & S–2,* a court's application of catalyst theory in a fee award may differ depending upon the analysis step at issue, *i.e.,* the initial prong of prevailing party status or the secondary prong of evaluating the degree of success obtained. The Court now turns to the latter analysis.

---

**15.** The Court notes also that when other circuits have contemplated the effect of *Farrar* upon catalyst theory, their consideration has been limited to the sole issue of prevailing party status. *See Kilgour v. City of Pasadena,* 53 F.3d 1007, 1010 (9th Cir.1995) (*"Farrar* does not preclude a catalyst test"), citing *Zinn by Blankenship v. Shalala,* 35 F.3d 273, 276 (7th Cir.1994); *Baumgartner v. Harrisburg Housing Authority,* 21 F.3d 541, 550 (3d Cir.1994); *LaRouche v. Kezer,* 20 F.3d 68, 71 n. 4 (2d Cir.1994); *Little Rock School Dist. v. Special School Dist. 1,* 17 F.3d 260, 263 n. 2 (8th Cir.1994); *American Council of the Blind v. Romer,* 992 F.2d 249, 251 (10th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993); *Craig v. Gregg County,* 988 F.2d 18, 20–21 (5th Cir.1993); *see also Paris v. U.S. Dept. of Housing & Urban Development,* 988 F.2d 236 (1st Cir. 1993); *Citizens Against Tax Waste v. Westerville School,* 985 F.2d 255 (6th Cir.1993). Most of the circuits have found that *Farrar* does not preclude application of catalyst theory to establish prevailing party status. None of the circuits, however, have found there to be a blanket preclusion of this theory with respect to calculating the actual fee award; this Court can find no such authority other than instant remand directive.

**16.** *See also Baumgartner,* 21 F.3d at 548–549 ("The Supreme Court has consistently emphasized that it is the ends, not the means, that are determinative both of whether a plaintiff has prevailed *and* of the appropriate amount of fees.") (citing *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (emphasis added).

In applying these factors, the Court finds that Plaintiffs are entitled to an award of fees. As to the first factor, the extent of Plaintiffs' relief is minimal in that they received $1.00 in damages when both monetary damages and injunctive relief were sought by them.[17] This finding must be offset by the significance of the legal issue upon which Plaintiffs prevailed, namely that their denial of lodging was done on the basis of race and as such, was found to be an illegal discriminatory act. Plaintiffs' lawsuit sought vindication for both themselves, and through their request for injunctive relief, for any other person treated differently by Defendants on the basis of race. While the record suggests that Defendants' "no locals" policy may have been instituted with the purpose of preserving the "family atmosphere" of the Inn, the jury found that this policy was improperly administered on the basis of race. There is little doubt that the jury's finding of discrimination against Defendant Maryland Hospitality, Inc. serves as a caution to that institution, to other public establishments, and to the general community as well, that unequal treatment on the basis of race will not be tolerated. As such, the public effect of this finding is notable and at minimum, serves every member of the public that chooses to cross the Inn's threshold. It is not a *de minimis* private victory, but one which serves the community.

The same can be said for the suspension of the "no locals" policy. While Plaintiffs did not enter into the actual conciliation agreement that generated this suspension, there can be no doubt that it would not have occurred, but for the Plaintiffs having protested their treatment to the HRC. Thus, to some extent, Plaintiffs achieved the goal sought by their claims for injunctive relief. It was their protest that sparked the change in the Defendants' conduct.[18]

The final step in this analysis is determining what amount of fees is reasonable under the circumstances of this case. In light of the fact that, *inter alia,* Plaintiffs received a nominal award against only one of the named Defendants, the Court finds that a relatively low award is required "without ... multiplying the number of reasonable hours expended by the reasonable hourly rate." *See Dillenbeck v. Hayes,* 830 F.Supp. 673, 675 (N.D.N.Y.1993), citing *Farrar,* —— U.S. at ——, 113 S.Ct. at 575. This nominal award, however, must be balanced by the public benefits implicit within the message sent by Plaintiffs' lawsuit and the suspension of the "no locals" policy. *Wilcox v. City of Reno,* 42 F.3d at 554. The Court has also considered the number of hours expended by Plaintiffs' counsel, along with the fees charged and the factors considered above. A reduction is in order based upon: (i) the nominal award; (ii) this Court's previous finding that the hours claimed by Plaintiffs' counsel are excessive; [19] (iii) Plaintiffs' voluntary dismissal of Defendant Andrew Sims; (iv) the Court's directed verdict as to punitive damages; (v) Plaintiffs' failure to achieve a reasonable conciliation agreement which would have resulted in actual monetary benefits; (vi) the judgment entered in Defendants' favor as to Count I; and (vii) the fact the Plaintiffs prevailed against only one of the named Defendants. *Dillenbeck v. Hayes,* 830 F.Supp. at 675. The Court finds that a reduction of Plaintiffs'

---

17. The Court notes, however, that this was not a case in which the plaintiffs placed unreasonable emphasis upon pursuing a huge award of damages. *See, e.g., Farrar,* —— U.S. at ——, 113 S.Ct. at 578; *Haywood v. Koehler,* 885 F.Supp. 624 (S.D.N.Y.1995). Instead, the Clarks' Amended Complaint shows that Plaintiffs intended to: (i) prevent further discriminatory action on the part of Defendants; and (ii) secure any damages that "would fully compensate each Plaintiff for the economic loss, humiliation and emotional distress caused by Defendants ..." Amended Complaint at ¶ 27(d).

18. In *S–1 By and Through P–1,* Judge Wilkinson dissented in part based upon his concern that

catalyst theory discourages public officials from taking initiatives to remedy civil violations because these voluntary changes might later establish the basis for an attorney's fee award. 6 F.3d at 172. Under *S–1 & S–2,* Plaintiffs were not eligible to seek a reasonable attorney's fee until they had achieved prevailing party status within the parameters set by *Farrar* and *S–1 & S–2.* As such, a public official should not be deterred from taking voluntary remedial action unless he or she has reason to fear that a plaintiff will prevail under a judgment, consent decree or settlement entered in the case at bar.

19. *See Clark v. Sims,* Civil Action No. N–89–1577, Memorandum at 11–12 (D.Md. Oct. 6, 1992).

fee request to twenty percent of the lodestar amount is reasonable based upon the foregoing concerns. Plaintiffs shall recover an attorney's fee of $24,511.09. *See Goldsmith v. City of Atmore,* 1995 U.S.Dist. LEXIS 1529 (S.D.Ala. Feb. 7, 1995).

A separate Order shall enter.