**D. Cecil LUCAS, Plaintiff,**

**v.**

**Captain Dwain GUYTON, individually as Correctional Officer at Broad River Correctional Institution; Richard L. Harvey, individually as Correctional Officer at Broad River Correctional Institution; and Lester A. Hubbard, individually as Correctional Officer at Broad River Correctional Institution, Defendants.**

Civ. A. No. 3:93–2469–18.

United States District Court,
D. South Carolina,
Columbia Division.

Sept. 25, 1995.

J. Christopher Mills, Columbia, SC, for plaintiff.

David L. Morrison, Columbia, SC, for defendant.

### ORDER

NORTON, District Judge.

#### I.  INTRODUCTION

Cecil Lucas does not deserve much sympathy.  His attorney knew this when he decid-

ed to represent him and the Defendants knew that when they were notified of his claim. Cecil Lucas broke into the home of an elderly couple late at night, killed them both and burglarized their home. His attorney knew when this he filed his Complaint, as did the Defendants when they filed their Answer. Cecil Lucas was convicted of these crimes, was sentenced to death and has lived on death row since 1983. His attorney knew this as he prepared his case for trial and the Defendants knew this as they planned their litigation strategy. Most of Cecil Lucas' witnesses had been convicted of murder and were also awaiting the ultimate punishment meted out by society. His attorney knew that when he took their depositions to be read at trial and the Defendants knew that when they prepared their witnesses to testify live at trial. Cecil Lucas admitted to being drunk at the time of the incident and to possibly spitting on the Defendants. His lawyer knew that before the trial of this case, as did the Defendants. Cecil Lucas could prove no out of pocket damages; he had no medical bills; he had no lost wages; he had no permanent injuries. His lawyer knew this as he attempted to settle his case and the Defendants knew this when they refused to negotiate Cecil Lucas' claims. Cecil Lucas' jury was comprised of four white jurors and four black jurors; Cecil Lucas is white and each Defendant is black. At trial, there was testimony that Lucas used highly offensive racial slurs towards the Defendants. His lawyer knew this at the trial of the case as did the Defendants. Cecil Lucas did not have much left in this world; he had the minimal possessions that he was allowed to keep on death row; he had some ability to communicate with the outside world and he retained some of his constitutional rights, having lost his right to liberty and possibly his right to life.[1] One right Cecil Lucas retained on death row was his right under the Eighth Amendment of the Constitution to be free from cruel and unusual punishment—that is what this case is all about. For Cecil Lucas to be a successful in his claim against the Defendants, both parties agree that the jury had to find that on December 21, 1992, the Defendants maliciously and sadistically inflicted bodily harm on Cecil Lucas. His attorney knew that as he argued his case to the jury. The Defendants' attorney knew that as he argued their case to the jury. Cecil Lucas does not deserve much sympathy, but a jury of eight men and women from different areas of South Carolina listened to the evidence presented to them and found for Cecil Lucas in the amount of ten cents. Cecil Lucas may not deserve much sympathy, but the jury found that he did not deserve what happened to him on December 21, 1992.

## II. BACKGROUND

This matter is now before the court on Plaintiff's Motion for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988. As noted above, this was an extremely unusual case. Plaintiff's petition for attorney's fees and costs comes as a result of Plaintiff, a death row inmate, being a prevailing party in a section 1983 suit against three correctional officers. In his Complaint, Plaintiff alleged that on December 21, 1992, the three correctional officer Defendants—Captain Dwain Guyton, Richard L. Harvey, and Lester A. Hubbard—violated his Eighth Amendment right against cruel and unusual punishment by sadistically and maliciously beating him. The Complaint asserted two Eighth Amendment causes of action: (1) a cause of action for a violation of his rights by Defendants at the initial stages of an altercation with the officers as they took him from his individual cell to an isolation cell, and (2) a cause of action against Defendants alleging that they beat him further once he was placed in the isolation cell.

During the four day trial, the jury was informed that Plaintiff had an extensive history of fighting correctional officers in addition to a long history of self inflicted injury, including several attempts at suicide. The incident at issue occurred on December 21, 1992 after a Christmas pizza party for the death row inmates. Plaintiff, after using a telephone, got into an argument with Officer Harvey and threatened Harvey with a serving spoon. As a result of this threatening

---

1. Cecil Lucas's denial of habeas corpus is on appeal to the Fourth Circuit.

action, correctional officers escorted Plaintiff back to his cell and then came to take him to an isolation cell. Plaintiff refused to submit to the officers when they came to take him to the isolation cell and started fighting with them. Plaintiff admitted that he was intoxicated at the time, having imbibed a significant amount of homemade Christmas cheer called "buck." Plaintiff also admitted that he was wrong to initially resist the officers' efforts to take him to the isolation cell, but claimed that once he was subdued with handcuffs and leg irons, Defendants maliciously and sadistically beat him. Photos and a video taken after the incident showed significant black and blue facial bruising and swelling. Plaintiff alleged that these injuries were the result of Defendants' dropping Plaintiff face first onto the cement floor while he was handcuffed, forcefully ramming his face into prison bars, and striking Plaintiff in the face.

At trial, Defendants admitted to having to use force to subdue Plaintiff, but claimed to have used only such force as was necessary to subdue a drunken, violent, resisting, profane, belligerent prisoner. Defendants steadfastly maintained that almost all of Plaintiff's bruising was self inflicted and not the result of any intentional acts on their part. It was Defendants' position that Plaintiff's facial injuries occurred when Plaintiff tripped and fell on his face when he was let go by correctional officers who were trying to avoid Plaintiff's spitting in their faces. Regardless of the origin of Plaintiff's injuries, the evidence revealed Plaintiff's eyes were swollen completely shut and his face was badly bruised.

After four days of trial, in which Plaintiff and Defendants each testified and Plaintiff presented deposition testimony of numerous other death row inmates,[2] the jury found for Plaintiff on the first cause of action against all three Defendants and awarded nominal damages in the amount of ten cents. On the second cause of action, the court directed a verdict for Defendants Harvey and Hubbard and the jury found in favor of Defendant Guyton. Subsequent to trial, Plaintiff's counsel applied for fees and costs pursuant to 42

U.S.C. § 1988. With Plaintiff's petition for fees, he has submitted an affidavit that includes a detailed itemized list of fees totaling $29,516.50 and costs amounting to $1,856.17.

## III. ANALYSIS

### A. Attorney's Fees in Nominal Damages Cases

■ Under 42 U.S.C. § 1988, a prevailing party is entitled to a reasonable attorney's fee in a § 1983 action. The landmark case discussing awards of attorney's fees for a plaintiff who receives only nominal damages in a civil rights action is *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In *Farrar*, the Court held that a plaintiff who is awarded nominal damages is considered a prevailing party for the purposes of the statute. *Id.* at ——, 113 S.Ct. at 573. Although the Court in *Farrar* found such plaintiffs to be prevailing parties under the statute and that they are not precluded from an award of attorney's fees, the "technical" nature of a nominal damages award must be considered when a court decides whether to award attorney's fees. *Id.* at ——, 113 S.Ct. at 574. The Court stated:

> In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury.... When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.

*Id.* at ——, 113 S.Ct. at 575 (citing *Carey v. Piphus*, 435 U.S. 247, 254–57, 264, 98 S.Ct. 1042, 1047–52, 55 L.Ed.2d 252 (1978)) (emphasis added). The Court emphasized: "Indeed 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of the success obtained.'" *Id.* at ——, 113 S.Ct. at 574 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)); *see Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 630 (4th Cir.1995) (addressing the award of attorney's

---

**2.** All of Plaintiff's witnesses to the incident were death row inmates. For obvious security reasons, Plaintiff's attorney agreed to present their testimony to the jury by way of deposition.

fees under the Fair Debt Collection Practices Act).

■ In her concurring opinion in *Farrar*, Justice O'Connor examined the congressional intent behind the statute and recognized the statute's discretionary nature, but concluded that Congress did not enact the statute to reward a "technical or de minimis victory," a "pyrrhic" victory, or "chimerical accomplishments." *Id.* at ——, 113 S.Ct. at 577 (O'Connor, J. concurring). She further stated: "That is not to say that *all* nominal damages awards are *de minimis.* Nominal relief does not necessarily a nominal victory make." *Id.* at ——, 113 S.Ct. at 578. Finally, she identified the following three factors that a court should consider in determining if plaintiff's award of nominal damages is merely a de minimis victory: "first, the difference between the judgment recovered and the recovery sought; second, the significance of the legal issue on which the plaintiff prevailed; and third, the public purpose served by the litigation." *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993) (citing *Farrar*, 506 U.S. at ——, 113 S.Ct. at 578–79).

■ It is this court's opinion that the jury's award of nominal damages in the amount of ten cents, which may appear on its face to be a de minimis victory, was in reality a significant accomplishment under the very unique circumstances of this case. It is hard to imagine a more repugnant or unsympathetic client to put before a jury. *See Wilcox v. City of Reno*, 42 F.3d 550, 557 (9th Cir. 1994) (awarding attorney's fees under § 1988 and recognizing the unsympathetic nature of the plaintiff, who was a convicted felon, drunk at the time of the alleged excessive police force incident and who had just broken a beer bottle on a woman's face). Although the jury was not told the specific circumstances of the double murder that Cecil Lucas committed in 1983, the jury was aware

that Plaintiff was on death row and could reasonably conclude that those on death row are usually there for a good reason. The evidence before the jury also demonstrated that Plaintiff had a history of self inflicted injury and had the unfortunate habit of fighting with correctional officers. The day of the incident, Plaintiff admitted to being drunk, swinging the first punch, possibly having spit at Officer Harvey, and violently resisting the officers' efforts to take him to the isolation cell. All of Plaintiff's corroborating witnesses, whose testimony was read by deposition, were death row inmates—not the type of people that are usually seen to be overly credible. The mere fact that the jury was able to look past these highly prejudicial and negative factors and render a verdict for Plaintiff, was far from a de minimis or pyrrhic victory. Instead, Plaintiff's verdict was a vindication of an important constitutional right and merits compensation for his attorney. The overall success that Plaintiff obtained "goes well beyond" the ten cent verdict. *See Wilcox,* 42 F.3d at 557.

Although the Court in *Farrar* denied attorney's fees to the prevailing party of a nominal damages verdict, *Farrar* is distinguishable on several important respects. For example, the litigation in *Farrar* was costly and prolonged—lasting over ten years and finally being resolved at the U.S. Supreme Court after two decisions by the circuit court of appeals. 506 U.S. at ——, 113 S.Ct. at 575 (O'Connor, J. concurring). This case was tried less than two years after it was filed and the detailed list of expenses submitted by Plaintiff's counsel demonstrate to this court that counsel expended a very reasonable amount of time on the case.[3] *Contra Fair Housing Council v. Landow*, 999 F.2d 92, 97 (4th Cir.1993) (denying award of attorney's fees when counsel submitted

---

**3.** Under *Farrar*, when a jury returns a nominal damage verdict, this court is not required to undertake a full scale fee analysis utilizing the twelve *Johnson* factors in reviewing counsel's request for attorney's fees if the court awards "low fees or no fees." *Farrar*, 506 U.S. at ——, 113 S.Ct. at 575 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 1937–38 n. 3 (1983)); *Clark v. Sims*, 28 F.3d 420, 424–25 (4th Cir.1994). However, this court ultimately ap-

plies the *Johnson* reasonableness factors test because it decides a fee award much greater than "low fees or no fees" is appropriate under the special circumstances of this case, and the Fourth Circuit has repeatedly directed district courts to apply these factors in determining an appropriate fee award. *Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir.1995) (citing *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir.1986)).

"woefully inadequate time records" and the amount requested shocked the conscience of the court).

Additionally, an analysis of the three factors enumerated by Justice O'Connor helps to draw distinctions between *Farrar* and other cases in which the fee issue has been addressed in the context of a nominal damage verdict.[4] The first factor is the difference between the judgment recovered and the recovery sought. *Farrar*, 506 U.S. at ——, 113 S.Ct. at 578 (O'Connor, J. concurring). This court believes that the first factor weighs in favor of an award of fees. In *Farrar*, the plaintiff requested seventeen million dollars from six defendants and ultimately prevailed against only one for the sum of one dollar. 506 U.S. at ——, 113 S.Ct. at 575. In this case, Plaintiff sued three Defendants for two claims of excessive force. Although Plaintiff was unsuccessful in proving the second excessive force cause of action against Defendants, he did prevail in the first excessive force cause of action against all three Defendants. Even though the jury only awarded Plaintiff ten cents, this court does not believe that the monetary amount alone should be determinative of the degree of success—especially in light of the fact that Plaintiff's trial strategy did not include a high demand for monetary damages.

The fact that Plaintiff prevailed in any way in this action demonstrates an impressive effort by counsel of overcoming many significant adverse factors. Counsel recognized throughout the trial that, due to the unique nature of this case, it was primarily about the vindication of the constitutional rights of a death row inmate. Although Plaintiff's counsel in closing argument asked the jury to consider compensatory and punitive damages, he frankly recognized the difficulty of such a request considering Plaintiff's death row status. In fact, counsel even stated in closing that the case was not about "ringing the bell" and getting "big money," but was instead about the violation of important constitutional rights and that a nominal damage verdict in Plaintiff's favor would send a message to the Defendant correctional officers that "it wasn't business as usual" on death row. Counsel for Plaintiff did not argue a dollar amount before the jury nor is one included in the Complaint. Further, Plaintiff's counsel specifically requested and presented to the court the nominal damage jury charge.

In other cases in which attorney's fees have been denied under *Farrar* due to a nominal damage verdict, the courts have focused on the fact that such a verdict, encompassing little monetary relief, is indeed a failure when the injured party specifically sets out to recover large sums of money. For example, in *Cramblit v. Fikse*, 33 F.3d 633 (6th Cir.1994), the Sixth Circuit affirmed the lower court's denial of attorney's fees in a § 1983 case in which the plaintiff received only nominal damages because the court found that plaintiff's "primary goal in the underlying § 1983 action was to obtain monetary damages." *Id.* at 635. In fact, in the closing argument and rebuttal, plaintiff's counsel in *Cramblit* specifically demanded "full and fair compensation" and "full and fair punitive damages" and emphatically stated "this is not a nominal damages case...." *Id.* at 635; *see also Romberg v. Nichols*, 48 F.3d 453, 455 (9th Cir.1995) (denying attorney's fees in § 1983 case in which plaintiff sought sixteen million dollars in punitive and compensatory damages from eight defendants, but received only nominal damages); *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993) (denying attorney's fees in § 1983 case in which plaintiff received nominal damages, but sought "substantial compensatory and punitive damages"); *Haywood v. Koehler*, 885 F.Supp. 624, 629 (S.D.N.Y.1995) (denying attorney's fees when plaintiff sought

---

4. This court finds an adequate fee award is substantiated by Justice Thomas' majority opinion in *Farrar*. Although the court has been unable to find any published opinion of the Fourth Circuit adopting the three part O'Connor analysis, the court finds the analysis helpful in analyzing the appropriateness of the amount of the fee award and recognizes the use of the three part analysis by other circuits. *See e.g., Milton v. Des Moines, Iowa*, 47 F.3d 944, 946 (8th Cir.1995); *Jones v. Lockhart*, 29 F.3d 422, 423–24 (7th Cir.1994); *Maul v. Constan*, 23 F.3d 143, 145 (7th Cir. 1994); *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993); *Haywood v. Koehler*, 885 F.Supp. 624, 629 (S.D.N.Y.1995).

ten million dollars from two defendants, but received a nominal damage verdict against only one defendant); *Briggs v. Marshall,* 881 F.Supp. 414, 419 (S.D.Ind.1995) (denying attorney's fees in § 1983 case in which plaintiff recovered nominal damages, but sought specific, large monetary amounts from the individual defendants). *But see Clark v. Sims,* 894 F.Supp. 868, 873, n. 17, (1995) (awarding attorney's fees and recognizing "that this was not a case in which the plaintiffs placed unreasonable emphasis upon pursuing a huge award of damages.") Additionally, this was not a case in which counsel set out to recover a large monetary verdict and then made a last minute pitch in closing argument for nominal damages. *See e.g., Romberg,* 48 F.3d at 455 (denying attorney's fees when plaintiff initially requested two million dollars in punitive and compensatory damages from each of eight defendants, but made last minute pitch for nominal damages in closing argument).

Recovering large sums of money was not the theme nor the trial strategy of this case. Plaintiff's Complaint simply requested compensatory or nominal damages "in an appropriate amount." Cmplt. ¶ 16. Additionally, Plaintiff's answer to the standard interrogatory, which requested he "describe said injuries and damages in detail and list the elements of damages for which you contend you are entitled to recover and the measure by which you contend the same should be computed," simply described Plaintiff's physical injuries, but did not list any monetary amount. Pl.'s Answer Interrogs. ¶ 5. Therefore, this court finds that the jury's favorable nominal damage verdict[5], demonstrating that the jury found that Defendants maliciously and sadistically violated Plaintiff's constitutional rights, was exactly the relief Plaintiff sought.[6] *See Farrar,* 506 U.S. at ——, 113 S.Ct. at 578 (O'Connor, J. concurring) ("[A]n award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved.").

O'Connor's second factor weighs strongly in favor of an award of attorney's fees. The second factor looks to the significance of the legal issue on which plaintiff prevailed. *Farrar,* 506 U.S. at ——, 113 S.Ct. at 578 (O'Connor, J. concurring). In *Jones v. Lockhart,* 29 F.3d 422 (8th Cir.1994), a similar prisoner case involving a violation of the Eighth Amendment, the Eighth Circuit granted an award of attorney's fees in spite of a nominal damage award.[7] The court recognized the significance of the constitutional right to be free from cruel and unusual punishment and stated: "[W]e find the vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to the business interest alleged in *Farrar."* *Id.* at 424 (citing *Farrar,* 506 U.S. at ——, 113 S.Ct. at 570). This court agrees with the Eighth Circuit that the constitutional right—

---

5. This court realizes that the nominal damage verdict may have been a result of Plaintiff's inability to prove actual damages. There was no evidence of medical bills, expenses, nor any monetary losses incurred by Plaintiff, most likely because of Plaintiff's incarceration. However, this court recognizes the difficulty of proving such damages under the unique circumstances of the case and the reality that most jurors would find it difficult to award monetary damages to a death row inmate. This court does not believe that the jury's decision not to award compensatory or punitive damages to be fatal to this petition for attorney's fees.

6. In correspondence to the court from Plaintiff's counsel dated August 29, 1994, almost a year before the trial, counsel stated: "The case has merit and was filed without any intent to harass **or for any other purpose than to vindicate the constitutional rights of Mr. Lucas."** (Letter from J. Christopher Mills to the court of 8/29/94,

at 1–2) (emphasis added). Defendants also knew this case was not about money in that they informed the court on September 16, 1994, that: "We expect that this case will be tried. It does not appear to be a case that is appropriate for summary judgment, **nor is it a case that my clients intend to settle."** (Letter from Defendants' counsel to the court dated 9/16/94, at 1) (emphasis added).

7. The court found that the lower court had erred in awarding fees in the amount of $25,000 based on the mistaken premise that the plaintiff had prevailed on a deliberate indifference to serious medical needs claim when in fact he had only prevailed on an excessive force cause of action. Therefore, the court reduced the fee award amount to $10,000. *Jones,* 29 F.3d at 423–24. In deciding to award attorney's fees, the court also found the award of punitive damages to be significant, but that award consisted of only one dollar. *Id.* at 423–24.

of all persons regardless of their individual circumstances—to be free from cruel and punishment is one of the premises upon which this great nation was founded and that right continues to distinguish this nation today. This is a fundamental protection that the Constitution guarantees all persons— even those on death row.

■ Finally, considering Justice O'Connor's third criteria, this court strongly believes that this civil rights litigation served an important public purpose. The purpose for awarding attorney's fees under 42 U.S.C. § 1988 is to provide an incentive for competent and skilled attorneys to take on unpopular cases and indigent clients thereby acting as a "private attorney general." *Farrar*, 506 U.S. at ——, 113 S.Ct. at 578 (O'Connor, J. concurring) ("[I]t is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory."); *see City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (citing *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir.1982)); *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). As the Court stated in *Newman*, when a plaintiff brings a civil rights claim, "he does so not only for himself but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman*, 390 U.S. at 402, 88 S.Ct. at 966. Although the verdict in this case might not have a far reaching effect beyond the walls of South Carolina's death row or its prisons, this court believes that the verdict will have a significant effect within those walls. *But see Haywood*, 885 F.Supp. at 629 (denying attorney's fees under the O'Connor analysis because the plaintiff sought ten million dollars in damages, prevailed against only one defendant for nominal damages and the court found that, although

the excessive force claim was significant, "the illegality of the use of excessive force on inmates is already clearly established" [8]).

■ Although Defendants disagree, this court believes that the probable catalytic effect of the judgment against the Defendants can be considered in analyzing this third criteria and can have an impact on the amount of the fee award. Such analysis is directly contemplated by Justice O'Connor in *Farrar*. *See* 506 U.S. at ——, 113 S.Ct. at 578–79 (recognizing the district court did not identify the "type of lawless conduct that **might be prevented.**" (emphasis added)). Additionally, such analysis would appear to be consistent with current Fourth Circuit law. In *S–1 & S–2 v. State Bd. of Educ.*, 21 F.3d 49 (4th Cir.) (en banc) (per curiam), *cert. denied*, —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994), the Fourth Circuit reversed its earlier decision and rejected the catalyst theory as a grounds for determining whether a party is a "prevailing party" for the purposes of section 1988. *Id.* at 51 (citing *Farrar*, 506 U.S. at ——, 113 S.Ct. at 573–74). Although the application of the third O'Connor factor involves somewhat of a secondary application of the catalyst theory, this court recognizes that under the clear mandates of *Farrar* and *S–1 & S–2*, Plaintiff has already established prevailing party status by the "virtue of having obtained an enforceable judgment." *Id.* at 51. To the extent that a subsequent Fourth Circuit case has appeared to infer that the catalyst theory cannot be considered in calculating the amount of the fee award,[9] this court finds such a position was not intended by *Farrar* nor was it the holding of *S–1 & S–2*. Instead, this court agrees entirely with the analysis and rationale of the Maryland District Court in the *Clark v. Sims* case on remand, 894 F.Supp. 868, 87–872 & n. 15 (1995), in which that court recognized that

---

8. It makes little difference to a wrongfully beaten prisoner if the right against excessive force is "clearly established" when the facts reveal the correctional officers disregarded that "clearly established" right. Indeed, the essence of all civil right's claims are violations of "clearly established rights" and the purpose of section 1983 and section 1988 is to allow citizens an avenue for redress for violations of these rights.

9. *See Clark v. Sims*, 28 F.3d 420, 425 (4th Cir. 1994) ("In calculating the appropriate fee award, the court must also be guided by our recent holding in *S–1 & S–2 v. State Board of Educ.* In *S–1 & S–2*, we held that a court may not apply 'catalyst theory' in determining what results are attributable to litigation.").

the consideration and application of a catalyst theory approach in determining the amount of the fee is distinguishable from application of the catalyst theory in determining prevailing party status. On remand, the Maryland District Court stated:

> Although, the Clark Panel suggests that *S–1 & S–2* stands for a total elimination of catalyst theory per se, it appears that *S–1 & S–2* addresses only the more limited issue of how to establish prevailing party status....
>
> It is the opinion of this Court, that once a party has been otherwise found to be a prevailing party, catalyst theory remains available for consideration as a factor in arriving at the actual amount of the fee award, if any. This secondary application of catalyst theory was not specifically prohibited by either *S–1 & S–2* or *Farrar*.

*Id.* at 871 (citing *Kilgour v. City of Pasadena*, 53 F.3d 1007, 1011 n. 4 (9th Cir.1995) (adopting the catalyst theory for purposes of determining prevailing party status, which the Fourth Circuit has expressly rejected, but also acknowledging its application as a "factor in determining the extent of success.")). Therefore, this court believes a consideration of the verdict's overall effect in determining the fee award amount is not only consistent with *Farrar*, but also supportive of the rationale behind awarding attorney's fees in civil rights cases in which the plaintiff's attorney serves as a private attorney general. Therefore, in this case, an award of a fee is supported by *Farrar* and the O'Connor test. Further, because this court finds the victory to be far from de minimis or pyrrhic, the court believes a fee greater than a low fee is appropriate.

### B. Amount of Attorney's Fees

■ Having decided that this is a rare case in which fees should be awarded and that a fee award greater than a low fee is appropriate, this court's discretion in determining the reasonableness of the fee amount is strictly guided by the twelve factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). *Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir. 1995). Those factors are as follows:

(1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal service; (4) the preclusion of other employment opportunities for the attorney due to the attorney's acceptance of the case; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.

*Id.* at 73 (citing *Daly v. Hill*, 790 F.2d 1071, 1075 n. 2 (4th Cir.1986)). A district court must consider the *Johnson* factors in determining the reasonable hourly rate and the reasonable number of hours that are then multiplied to calculate the lodestar figure, which will usually reflect a reasonable fee. *Daly*, 790 F.2d at 1078; *E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir.1990). "*Johnson* expressly contemplates that these factors be used *both* in calculating the hourly rate and the reasonable number of hours expended on a case." *Trimper*, 58 F.3d at 76.

#### 1. Reasonable Hourly Rate

■ Plaintiff's case was handled by one attorney with very minor assistance over its pendency by two other attorneys within his firm. J. Christopher Mills, Plaintiff's counsel, billed 177.35 hours, whereas the two other attorneys billed a combined total of only one hour and an additional attorney, apparently not associated with counsel's firm, billed $200.00 for preparation and research assistance of the fee memorandum. The hourly fee for both in court and out of court time requested by Mr. Mills is $140.00. W. Gaston Fairey, a senior partner at counsel's law firm, billed .4 of an hour at the rate of $225.00 per hour. Rochelle Romosca, a junior associate at the firm, billed .6 of an hour

at a rate of $100.00 per hour.[10] Based on the discussion of the applicable *Johnson* factors below, this court finds that the $140.00 hourly fee is reasonable for Mr. Mills and Mr. Fairey and that an hourly fee of $100.00 is reasonable for Ms. Romosca. Although Mr. Fairey is an experienced attorney, this court lowers his fee to be the same as Mr. Mills. This court finds that relevant to determining the appropriate hourly rate are *Johnson* factors two, three, four, five, eight, nine, ten and eleven.[11]

a. *Novelty and difficulty of the questions presented*—This court finds that although the law involved in this case was no more or less difficult than most civil rights cases, the circumstances associated with the case made it a very difficult case to prepare for, try and win. As previously mentioned, Plaintiff and all his witnesses were death row inmates. Although Plaintiff was present in court, all of his witnesses testified by way of deposition. The question presented to the jury was whether they would believe Plaintiff's testimony and deposition testimony of his fellow death row inmates who maintained that the correctional officers had beaten him in violation of his constitutional rights or the live testimony of Defendants and their fellow correctional officers who contended that they had used only the amount of force necessary to subdue Plaintiff.

b. *The skill required to perform the legal service*—This case required an above average degree of skill to successfully try. Due to Plaintiff's unfavorable character and the circumstances involved in the incident, it is this court's opinion that this case required a seasoned trial attorney with an in depth knowledge of civil rights law who demonstrated a very positive demeanor before a jury. Success in the courtroom also required an above average degree of pre-trial preparation and development of trial strategy. The affidavit presented by Mr. Mills supports the court's evaluation of his experience and skill level.

c. *The preclusion of other employment opportunities*—This court finds that Mr. Mills has a successful private practice that primarily involves civil rights litigation. Due to the acceptance of this case, which Mr. Mills realized from the outset had little chance of monetary recovery, this court is convinced that the hours spent on this case precluded Mr. Mills from working on other current files and entertaining additional case work.

d. *The customary fee for such services*—The court finds that the $140.00 hourly fee requested by Plaintiff's counsel to be within the range of customary fees for such services in the Columbia, South Carolina area. Although Mr. Mills produced no affidavits to the court with respect to the fee charged by other civil rights practitioners in the area,[12] this court is familiar with the market rate for that area and recognizes that the $140 per hour is the fee that Mr. Mills and other attorneys of his experience normally charge and successfully collect from their clients. *Sheppard v. Riverview Nursing Ctr., Inc.*, 870 F.Supp. 1369, 1377 (D.Md.1994) ("The Court also has discretion to make factual findings based on personal knowledge of prevailing rates in the relevant market.") (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir.1994)).

---

**10.** Additionally, four persons assisted as law clerks or project assistants at the rate of $35.00 per hour for a total of 12.55 hours. Counsel's paralegal also billed 63.05 hours at a $65.00 hourly rate. The court considers the rate for these services to be reasonable for the Columbia, South Carolina area.

**11.** This court finds the sixth *Johnson* factor is not relevant to the award in this case because "contingency multipliers may not be allowed in statutory fee cases." *Sheppard v. Riverview Nursing Ctr.*, 870 F.Supp. 1369, 1380 (D.Md.1994) (citing *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

**12.** This is not problematic because of the court's familiarity with the fees charged in that region. This court has been presented with affidavits in other cases supporting much higher hourly rates for lawyers who have half the talent and ability of Mr. Mills. However, lacking such familiarity and supporting affidavits, this court would have difficulty with this factor. In future petitions, counsel are encouraged to submit affidavits of other attorneys as the burden of establishing the reasonable rate rests with the fee applicant. *Stacy v. Stroud*, 845 F.Supp. 1135, 1138 (S.D.W.V. 1993) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)).

*e. The amount in controversy involved and the results obtained*—Although the amount in controversy was not significant in this case, the degree of success was very significant. A death row inmate prevailed on a cruel and unusual punishment claim against three correctional officers all of whom testified and directly disputed his version of the events. Additionally, although Plaintiff was not successful in an additional cause of action against these officers, the two causes of action developed from a continuing incident involving a common core of facts and identical legal theories. Normally, claims are treated as related if they are "part and parcel of a series of events between the plaintiff and defendants, occurring within a relatively short time span in one particular setting." *Burston v. Virginia,* 595 F.Supp. 644, 650 (E.D.Va.1984). In this case, the court will not attempt to reduce the fees to recognize the loss on the second cause of action because these two claims were directly related and resulted from a series of events that occurred over a very short time span. Instead, the court focuses on the relative significance of the overall relief Plaintiff obtained. *Stacy,* 845 F.Supp. at 1140–41 (citing *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940 and *Abshire v. Walls,* 830 F.2d 1277, 1282–83 (4th Cir.1987)).

*f. The experience, reputation and ability of the attorney*—This court finds that Mr. Mill's experience in civil rights litigation, his reputation as a fine trial attorney and his courtroom demeanor and skill, as demonstrated by his client's verdict in this case, are surely worthy of a fee on the upper spectrum of the market rate.

*g. The undesirability of the case*—As has been previously mentioned, this court finds it difficult to imagine a more undesirable case. Plaintiff is a convicted double murderer who admitted to starting the incident, while drunk on death row, that ultimately resulted in his injury. He had a history of self abuse and fighting with and spitting on correctional officers. Three correctional officer Defendants, and other correctional officers called as witnesses, directly disputed his claims. From the outset of the case, because of the great disparity in the apparent credibility of the witnesses on each side, the prospect of any recovery or favorable verdict would appear to have been very remote. Additionally, adequate preparation for the case involved numerous trips to death row along with deposing many of South Carolina's most notorious and brutal killers.

*h. The nature and length of the attorney's professional relationship with the client*—Mr. Mills representation of Plaintiff commenced on April 14, 1993 and lasted until the end of the trial in June of 1995. The court recognizes that the nature of the attorney client relationship in this case made it more difficult to prepare than would be so in the average litigation in which the client is not locked away in a high security prison facility.

Therefore, considering these *Johnson* factors, this court finds that the hourly rate of $140.00, requested by Mr. Mills, is indeed reasonable under the specific facts of this case.

### 2. Reasonable Number of Hours

Having determined the reasonable hourly rate, this court again relies on the *Johnson* factors to determine the reasonable number of hours. *Trimper,* 58 F.3d at 76. In so doing, this court pays close attention to the detailed bill submitted by Plaintiff's counsel recognizing that

> [c]ounsel for a party statutorily entitled to recover attorney's fees must exercise "billing judgment" and exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Sheppard,* 870 F.Supp. at 1376 (quoting *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940); *Daly,* 790 F.2d at 1079. The court finds *Johnson* factors one, two, three, seven, eight, nine, eleven and twelve relevant to the analysis of the reasonable number of hours billed.

*a. The time and labor required.* After reviewing the bill submitted by counsel, this court finds most of the hours charged by Plaintiff's attorney and staff are very reasonable expenditures of time. Additionally, it

appears to this court that counsel has very wisely and efficiently budgeted his time and made sound economical use of his staff. However, this court makes one minor reduction as follows:

■■■■ 1. J. Christopher Mills—Mr. Mills claims 177.35 hours. This court finds a reasonable amount of hours is 171.85 reflecting a 5.5 hour reduction for the following reason. On June 8, 1995, the bill reflected 7.3 hours for nine phone calls.[13] This court finds that amount of time to be excessive and unreasonable. Therefore, the charge for that day is reduced to reflect a total of 1.8 hours, (.2 for each phone call), which is more consistent with his billing practices for other phone calls. Of the hours billed by Mr. Mills, only 12.6 hours (7.3%) were billed for preparation of the petition for attorney's fees and the court finds that amount of time to be reasonable. *See Service News,* 898 F.2d at 966 (finding the expenditure of over 20% of the claimed time on fee preparation to be unreasonable in a case in which the attorney billed a total of 13.25 hours). Finally, this court is aware that this was a case in which Defendants refused to participate in settlement negotiations which necessitated the case to be settled before a jury. (Letter from Defendants' counsel to the court of 9/16/94, at 1).

2. W. Gaston Fairey—Mr. Fairey's claims totaling .4 hour of an hour are adequately documented and reasonable for the services rendered in the bill.

3. Rochelle Lyn Romosca—Ms. Romosca's claim for .6 of an hour is adequately documented and reasonable for the services described in the bill.

■■■ 4. Tammie Maria Pope—The bill includes 63.05 hours for services rendered by counsel's paralegal, Ms. Pope. The hours billed by Ms. Pope are sufficiently documented and very reasonable for the services she rendered. More than half of her billable hours, 44.3 hours (70%), were billed during the four day trial period. This court ob-

served Ms. Pope to be a diligent and very able paralegal who assisted in many respects during the trial including reading the depositions of Plaintiff's death row witnesses, taking notes throughout the proceeding and, on numerous occasions, conferring with counsel during his presentation of the case. Additionally, Ms. Pope was found to be a knowledgeable and reliable point of contact during the pendency of the case when Mr. Mills was unavailable. Therefore, this court finds 63.05 hours to be the reasonable amount of hours billed by Ms. Pope.

5. Law clerks and project assistants— The bill includes a total of 12.55 hours for various services provided by law clerks and project assistants. The court has reviewed the services rendered by these personnel and finds those services to be adequately documented and the hours to be reasonable for the services provided.

*b. Novelty and difficulty of questions—* This court has reviewed the itemized bill and notes that there is no time billed for research prior to the trial. Although the questions of law were not difficult, this court notes that Mr. Mills experience in civil rights litigation contributed to a lack of billing for basic research.

*c. The skill required to properly perform the legal services—*The court finds that the hours expended to be reasonable for an attorney with the skill of Mr. Mills.

*d. Time limitations imposed by the client or the circumstances—*Other than the court's numerous scheduling orders, this court is not aware of any time limitation that had an effect in this case. However, this court notes that this case, with its obvious logistic and security problems, was tried within two years of the Complaint being filed.

*e. The amount in controversy and the results obtained—*This court finds that the hours billed, with the minor adjustments above, are very reasonable for the results obtained. Mr. Mills prevailed at trial for a

---

**13.** It is likely that Mr. Mills accomplished other work related to the file during that time, but it is not properly documented in his section of the bill. Descriptions of work accomplished by counsel's paralegal and associate attorney indicate conferences with Mr. Mills regarding trial preparation and the juror questionnaire that day.

total of 171.85 hours of work including 45.6 hours billed during the intensive four day trial period.

*f. The experience, reputation, and ability of the attorney*—This court finds that the number of hours billed by Mr. Mills and his staff to be very reasonable in light of his experience level compared to an attorney with comparable experience.

*g. The nature and length of the attorney's professional relationship with the client*—Mr. Mills' representation of Plaintiff commenced on April 13, 1993 and lasted through June 15, 1995. Over the nearly two year period counsel's awarded billable hours total only 171.85 hours—a little over the time reflected in four average work weeks.

*h. Awards in similar cases*—This court finds the amount of hours billed for a case of this magnitude to be reasonable in light of hours billed in comparable civil rights litigation.

### 3. The Lodestar Figure

The above analysis of Plaintiff's motion for attorney's fees and supporting documentation yields the following totals as appropriate compensation in this case:

| | | | | |
|---|---|---|---|---|
| Mills | 171.85 hrs. @ $140/hr. | = | 24,059.00 |
| Fairey | .40 hrs. @ $140/hr. | = | 56.00 |
| Romosca | .60 hrs. @ $100/hr. | = | 60.00 |
| Pope | 63.05 hrs. @ $65/hr. | = | 4098.25 |
| Misc. staff | 12.55 hrs. @ $35/hr. | = | 439.25 |
| | TOTAL FEES | = | $ 28,712.50 |

### C. Amount of Recoverable Costs

[19–21] In addition to the above fees, Plaintiff's Motion includes a request for reimbursement for costs amounting to $1,856.17. Plaintiff is entitled to recover those costs that are reasonable and normally passed to a client. *Daly,* 790 F.2d at 1082–84. Plaintiff has included the appropriate receipts verifying costs for filing fees, depositions, meals, and service of process charges. Other costs include copying and fax charges and mileage charges. This court finds these costs to be reasonably incurred in the preparation of the case and are therefore recoverable from Defendants. However, the itemized costs also include a bill for $200.00 for attorney services rendered in research and assistance in preparing the memorandum in support of attorney's fees. To the extent that this court finds that cost to be duplicative of the 12.6 hours already billed by Mr. Mills for fee preparation and research, that $200.00 cost is disallowed. Therefore, this court awards $1,656.17 in costs to Plaintiff.

## IV. CONCLUSION

Although this court is aware that the usual fee in a nominal damages case is no fee at all, this was far from a usual case nor was the nominal damage verdict unimportant. As the court has attempted to describe throughout this Order, this was a case in which any lay person or attorney would have believed had no chance of a favorable verdict from the outset. As a result of Plaintiff's favorable verdict, this court finds the award of fees and costs is justified under both *Farrar* and *Johnson.*

Cecil Lucas does not deserve much sympathy. He may well deserve the sentence imposed by the jury in 1983, but in spite of that sentence, he convinced a jury in 1995 that he was maliciously and sadistically treated by Defendants on December 21, 1992. Cecil Lucas does not have much, but he still has some constitutional rights. These rights were vindicated by the jury's verdict on June 15, 1995.

It is therefore,

**ORDERED** that Plaintiff's Motion for Attorney Fees and Costs Pursuant to 42 U.S.C. § 1988 is hereby **GRANTED.** Defendants are hereby ordered to pay Plaintiff fees ($28,712.50) and costs ($1,656.17) reasonably incurred in the total amount of $30,368.67.

**ORDERED** that Defendants' Motion Requesting the Court to Review and Vacate the Clerk's Taxation of Costs, is hereby **DENIED.**

**AND IT IS SO ORDERED.**