**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 2 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

LENARD BARBER,

      Plaintiff-Appellee and
      Cross-Appellant,

v.

T.D. WILLIAMSON, INC.,

      Defendant-Appellant and
      Cross-Appellee.

Nos. 00-5015, 00-5033

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA
### (D.C. NO. 98-CV-615-J)

David W. Davis, Attorney at Law, Tulsa, Oklahoma, for the Plaintiff-Appellee and Cross-Appellant.

J. Daniel Morgan, Gable & Gotwals, Tulsa, Oklahoma, for the Defendant-Appellant and Cross-Appellee.

Before **HENRY** and **BRISCOE** , Circuit Judges, and **JENKINS** , Senior District Judge. [1]

**HENRY** , Circuit Judge.

---

[1] The Honorable Bruce S. Jenkins, Senior District Judge for the United States District Court for the District of Utah, sitting by designation.

Lenard Barber, who is half African American and half Native American, filed suit in state court against his employer T.D. Williamson, Inc. ("Williamson"), claiming that the company had discriminated against him in violation of Title VII and Oklahoma public policy. Williamson subsequently had the case removed to federal court, and soon thereafter the district court transferred the case, with the consent of the parties, to a magistrate judge for final disposition. Eventually, the case was tried before a jury but on the Title VII claims only. The jury found for Mr. Barber on the hostile work environment claim but concluded that he failed to prove the discriminatory termination and retaliatory discharge claims. It awarded Mr. Barber nominal damages in the amount of one dollar. Subsequently, the magistrate judge awarded attorney's fees to Mr. Barber and costs to both parties. On appeal, Williamson challenges the award of nominal damages as well as the award of attorney's fees. Mr. Barber cross-appeals on the award of costs. For the reasons set forth below, we affirm in part, vacate in part, and remand.

## I.  BACKGROUND

At trial, Mr. Barber presented three Title VII claims for the jury's consideration:  (1) hostile work environment, (2) discriminatory termination, and (3) retaliatory discharge.  Because the focus of this appeal is the hostile work environment claim, we need not recount in detail the facts that gave rise to the latter two claims except to note that Mr. Barber was fired on June 2, 1997, after a co-worker complained that Mr. Barber had violated a safety code.  According to Mr. Barber, his termination was discriminatory because a white employee, who had allegedly committed a similar infraction, had not been fired.  Mr. Barber also asserted that his discharge was retaliatory because, prior to being fired, he had complained of racial discrimination to management.

As for Mr. Barber's claim of hostile work environment, there was testimony at trial that co-workers referred to him as "nigger" and "watermelon boy"; that a co-worker approached Mr. Barber wearing a hat that resembled a Ku Klux Klan hood; that a co-worker showed Mr. Barber a drawing and told him that it depicted a "nigger" at the bottom of a well with four Ku Klux Klan members looking down; and that one employee said to another that African-American people are in general lazy and uneducated but that Mr. Barber was an exception to "the rule."  In addition, there was testimony that Mr. Barber was:  placed on extended

probation while similarly situated white employees were not; criticized for complaining about a white employee who had stolen his work; threatened by a white employee with a swastika tattoo; chastised for attendance problems even though a white employee's record on attendance was worse [2]; and denied permission by a white employee to receive a phone call. Finally, there was testimony that Mr. Barber reported some of the incidents to management but that he was reprimanded for having complained and that no or limited action was taken by management. At one point, management did respond by providing a racial diversity training class, but there was evidence that the harassment did not thereafter cease.

---

[2] A supervisor attempted to fire Mr. Barber because of these attendance problems but Mr. Barber was not discharged at that time. He was terminated a year later when a co-worker complained that he had violated a safety code.

## II. PROCEDURE

After hearing the evidence, the jury found for Mr. Barber on the hostile work environment claim but concluded that he failed to prove the remaining two claims. It then found that, even though "the law was violated [by Williamson,] . . . [Mr. Barber] suffered no damages," and so awarded nominal damages only in the amount of one dollar. Aplt's App. at 41 (verdict form, filed Sept. 23, 1999).

A week later, Williamson moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) on three grounds: (1) Mr. Barber had not presented sufficient evidence for his hostile work environment claim; (2) Mr. Barber had not timely filed his Title VII claims; and (3) nominal damages cannot be granted under Title VII. The magistrate judge ruled against Williamson on all three issues. Subsequently, Mr. Barber moved for an award of attorney's fees, which the magistrate judge granted. Several weeks later, the magistrate judge determined the actual amount of attorney's fees to be awarded and, after calculating that number, addressed the issue of costs. Both Mr. Barber and Williamson had requested costs, and the magistrate judge decided that "an award of costs to both . . . [was] appropriate." Aplt's App. at 94 (magistrate judge order, filed Jan. 21, 2000). Williamson thereafter filed a notice of appeal,

challenging both the nominal damages award and the award of attorney's fees.

Mr. Barber cross-appeals on the issue of costs.

### III. WILLIAMSON'S APPEAL, NO. 00-5015

In his brief, Mr. Barber initially argued that Williamson's appeal was not timely filed. Subsequently, Mr. Barber filed a motion with this court, asking that his objection to the timeliness of the appeal be dismissed. We grant Mr. Barber's motion and therefore proceed to the merits of the appeal.

### A. Nominal Damages Under Title VII

#### 1. Availability of Nominal Damages

Williamson argues first that the magistrate judge erred in permitting the jury to award nominal damages because, under Title VII, nominal damages cannot be granted. The company points out that, prior to the Civil Rights Act of 1991, it was clear that nominal damages could not be awarded under Title VII. See Griffith v. State of Colo. Div. of Youth Serv., 17 F.3d 1323, 1327 (10th Cir. 1994) (discussing Title VII prior to its amendment in 1991; holding that "nominal damages are compensatory in nature and since Title VII provides for equitable, not legal relief, nominal damages must not be awarded under Title VII"). It then

-6-

concedes that the Civil Rights Act of 1991 made legal remedies available but contends that these remedies were limited to "certain *specified* types of compensatory and punitive damages." Aplt's Br. at 14.

As a preliminary matter, we note that the verdict form provided to the jury contained the following entry under "Compensatory Damages": "If you find that the law was violated but that Plaintiff suffered no damages, you may award a nominal amount of $1." Aplt's App. at 41 (verdict form, filed Sept. 23, 1999). If Williamson believed that nominal damages were not appropriate under Title VII, it should have objected to this instruction before it was tendered to the jury. See Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."). According to Williamson, it did, see Aplt's Reply Br. at 5 ("It is the distinct recollection of Counsel for [Williamson] that an objection on the record was made at the conference on instructions."), but nothing in the record before us demonstrates such. See 10th Cir. R. 28.2(c)(3)(b) (noting that "[b]riefs must cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on . . . the giving of or refusal to give a particular jury instruction"); 10th Cir. R. 10.1(a) ("The appellant must provide all portions of the

transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal."). Because, so far as the record indicates, Williamson made no objection to the jury instruction, we simply review for plain error. See Giron v. Corrections Corp. of Am., 191 F.3d 1281, 1289 (10th Cir. 1999).

Williamson suggests, however, that even if it did fail to object to the jury instruction it raised the issue of nominal damages later in its motion for judgment as a matter of law, and so a de novo standard of review is warranted. See Thompson v. United States, 223 F.3d 1206, 1212 (10th Cir. 2000) (noting that a de novo standard of review applies to the denial of a motion for judgment as a matter of law). While we recognize Williamson's Rule 50(b) motion, we are not satisfied that it served to preserve the issue of nominal damages for de novo appellate review. City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), on which Williamson relies, is not availing because, in that case, the petitioner successfully preserved the issue by raising it in two motions filed *before* the jury retired to deliberate, not after. See id. at 119-20 (noting that the petitioner's failure to object to the jury instruction was not problematic because the petitioner had raised the issue in a motion for summary judgment and in a motion for directed verdict). More to the point is F.D.I.C. v. Noel, 177 F.3d 911 (10th Cir. 1999), in

which this court held that, "when a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." Id. at 915.

Because plain error is the applicable standard of review and not de novo, "[w]e will only reverse . . . in an exceptional circumstance – one where the error was patently plainly erroneous and prejudicial," Giron, 191 F.3d at 1289 (internal quotation marks omitted), and "fundamental injustice" would otherwise occur. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1211 n.6 (10th Cir. 2000). We conclude that Williamson has failed to demonstrate patent plain error and prejudice, let alone fundamental injustice. The company cites no case law in support of its argument that nominal damages are not available under Title VII, and it fails to explain the numerous Title VII cases (both within this circuit and beyond) in which nominal damages have been awarded. See, e.g., Brandau v. Kansas, 168 F.3d 1179, 1181 (10th Cir. 1999) (noting that the Title VII plaintiff was awarded nominal damages); Bristow v. Drake Street, Inc., 41 F.3d 345, 352 (7th Cir. 1994) (noting the same); Parton v. GTE North, Inc., 971 F.2d 150, 154 (8th Cir. 1992) (noting that "[i]t is the law of this Circuit . . . that nominal damages are appropriately awarded where a Title VII violation is proved even

though no actual damages are shown"). Williamson has wasted this court's time with a specious argument.

2. Harm Suffered by Mr. Barber

Williamson argues next that an award of nominal damages demonstrates that Mr. Barber suffered no harm and, if Mr. Barber suffered no harm, then he failed to prove a hostile work environment. See Aplt's Br. at 18 (contending that, "[a]s a matter of law, . . . an award of nominal damages is inconsistent with the definition of actionable harassment."). To state it simply, instead of arguing that nominal damages cannot be awarded under Title VII, Williamson is asserting that there can be no Title VII violation if nominal damages are awarded. We review this legal question de novo. See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1257 (10th Cir. 2001).

Once again, we find Williamson's argument to be without merit. First, nominal damages do not signify a total absence of harm. See Black's Law Dictionary 396 (7th ed. 1999) (defining nominal damages as "[a] trifling sum awarded when a legal injury is suffered but when there is no substantial loss or injury to be compensated"); see also Griffith, 17 F.3d at 1327 (noting that nominal damages "signify[] that the plaintiff's rights were technically invaded

-10-

even though he could not prove any loss or damage"). Second, given the verdict form, the jury did find injury to Mr. Barber, answering "yes" to the following question: "Do you find, from the viewpoint of a reasonable person, that the alleged actions toward Lenard Barber while he was employed by T.D. Williamson[,] Inc., were so severe and pervasive as to create a hostile or abusive work environment based upon his race?" Aplt's App. at 40 (verdict form, filed Sept. 23, 1999); see also id. at 41 (jury awarding Mr. Barber one dollar in nominal damages because it found "that the law was violated but that Plaintiff suffered no damages"). To summarize, we conclude that nominal damages are appropriate under Title VII and that, in the instant case, Mr. Barber was entitled to an award of nominal damages based on the jury's finding that he was subjected to a hostile or abusive work environment.

B.  Attorney's Fees

Williamson's final argument is that, even if a nominal damages award was proper, Mr. Barber should not have been granted attorney's fees. We review de novo the magistrate judge's legal analysis underpinning the award of attorney's fees but otherwise review the fee award for an abuse of discretion. See Brandau, 168 F.3d at 1181 (noting that there is an abuse of discretion if this court has "a

-11-

definite and firm conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances") (internal quotation marks omitted).

1. Farrar v. Hobby

After the jury rendered its verdict, Mr. Barber asked that the magistrate judge grant him attorney's fees pursuant to 42 U.S.C. § 2000e-5(k). See 42 U.S.C. § 2000e-5(k) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs . . . ."). Williamson objected, arguing that Mr. Barber was not entitled to a fee award because the jury had awarded him nominal damages only and, under Farrar v. Hobby, 506 U.S. 103 (1992), "[w]hen a plaintiff recovers only nominal damages . . . , the only reasonable [attorney's] fee is usually no fee at all." Id. at 115. In his order, the magistrate judge considered Williamson's objection but rejected it in light of several Tenth Circuit cases that interpreted Farrar, including Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074 (10th Cir. 1998), and Brandau v. Kansas, 168 F.3d at 1179. Based on these cases, the magistrate judge concluded that an award of attorney's fees was justified. On appeal, Williamson

argues that Gudenkauf and Brandau are "at odds" with Farrar and so Mr. Barber should have been denied attorney's fees altogether. Aplt's Br. at 22.

To the extent Williamson contends that Gudenkauf and Brandau are "at odds" with Farrar because they misinterpreted it, we reject the argument. Even if the argument had any merit, it is well established that one panel "cannot overrule the judgment of another panel of this court . . . absent en banc reconsideration or a superseding contrary decision by the Supreme Court." In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Of course, while we lack the authority to overrule Gudenkauf and Brandau, it is within our authority to clarify the cases, especially if the magistrate judge misread or misapplied them. Because the magistrate judge did not altogether interpret these cases correctly, we provide clarification and remand so that the magistrate judge (or the district court) may reconsider the issue of attorney's fees.

In Farrar, the Supreme Court held that, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [such as actual, compensable injury], the only reasonable [attorney's] fee is usually no fee at all." Farrar, 506 U.S. at 115. Notably, Justice O'Connor joined the opinion of the majority but also authored a special concurrence. In her concurrence, she agreed with the conclusion of the majority

-13-

that, "[w]hen the plaintiff's success is purely technical or de minimis, no fees can be awarded." Id. at 117 (O'Connor, J., concurring). However, she explained that not all nominal damages awards are in fact de minimis: As she put it, "[n]ominal relief does not necessarily a nominal victory make." Id. at 121 (O'Connor, J., concurring); see also id. at 124 (White, J., dissenting) (noting that the majority did not hold "that recovery of nominal damages *never* can support the award of attorney's fees"). As to what makes a victory nominal or otherwise, she – like the majority – found "[t]he difference between the amount recovered and the damages sought" to be a relevant consideration. Id. at 121 (O'Connor, J., concurring). But, unlike the majority, she also identified two other factors of import: first, "the significance of the legal issue on which the plaintiff claims to have prevailed" and, second, the accomplishment of "some public goal other than occupying the time and energy of counsel, court, and client." Id. at 121-22 (O'Connor, J., concurring).

In the instant case, the magistrate judge – in determining whether to award attorney's fees to Mr. Barber – stated that he would be guided by two things: (1) "the 'general rule' that attorneys fees are awarded to prevailing parties absent [special] circumstances which would make such an award unjust," Aplt's App. at 87 (magistrate judge order, filed Jan. 6, 2000), and (2) the three-part analysis

-14-

identified by Justice O'Connor in her special concurrence.  In looking to both, the magistrate judge properly followed this court's precedent.  See, e.g. , Brandau , 168 F.3d at 1182-83 (recognizing the general rule and applying the three O'Connor factors).  However, we caution that the former should not be unduly emphasized to the detriment of the latter.

In  Gudenkauf , though a mixed motive case, this court specified the proper approach to take:  "Under the generally applicable approach to a fee request by a civil rights plaintiff, a court must  *first*  assess whether special circumstances would make any award unjust. . . . Upon determining that the award of a fee is proper . . . , the court must  *then*  fix a reasonable fee,"  Gudenkauf , 158 F.3d at 1082 (emphasis added) – and, in certain circumstances, a reasonable fee could be zero.  See Farrar , 506 U.S. at 115 ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [such as actual, compensable injury], the only reasonable fee is usually no fee at all.").  Of course, this statement in  Gudenkauf  is somewhat tempered by Justice O'Connor's statement in  Farrar  that, "[w]hile that exception to fee awards has often been articulated separately from the reasonableness inquiry, sometimes it is bound up with reasonableness . . . . [W]here the only reasonable fee is no fee, an award of fees would be unjust; conversely, where a

-15-

fee award would be unjust, the reasonable fee is no fee at all." [3] Farrar, 506 U.S. at 118 (O'Connor, J., concurring).

As to what constitutes a reasonable fee, this court looks, as noted above, to the O'Connor factors. (Several of our sister circuits also look to the O'Connor factors for guidance. [4]) The first factor – i.e., "[t]he difference between the

_____

[3] Technically, we read Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997) – in which this court (following other circuits) adopted the O'Connor Farrar factors, see note 4, infra – and Gudenkauf and Brandau to establish the following procedure. First, under the relevant civil rights statutes, a court determines whether an award of fees should be made. Second, the court determines what amount would constitute a reasonable fee. In certain circumstances, that is, when an evaluation of the O'Connor factors reveals that "the plaintiff's success is purely technical or de minimis," no fee should be awarded. Farrar, 506 U.S. at 117 (O'Connor, J., concurring). Not to put too fine a point on it, the court must also remember Justice O'Connor's admonition that "[n]ominal relief does not necessarily a nominal victory make." Id. at 121 (O'Connor, J., concurring).

[4] Some of our sister circuits invoke the O'Connor factors explicitly. See, e.g., Jones v. Lockhart, 29 F.3d 422, 423-24 (8th Cir. 1994) (applying the three O'Connor factors to the case); Cartwright v. Stamper, 7 F.3d 106, 109-10 (7th Cir. 1993) (same).

Others do so implicitly. See, e.g., Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1052 (5th Cir. 1998) (noting that the plaintiff's "victory produced no 'public benefit' justifying an award of fees in spite of receiving only nominal damages"); O'Connor v. Huard, 117 F.3d 12, 17-18 (1st Cir. 1997) (noting that the plaintiff's victory was not de minimis because, among other things, it provided an incentive to attorneys to represent civil rights litigants such as the plaintiff and it served as a deterrent to future abuses); Sheppard v. Riverview

(continued...)

-16-

amount sought and the damages recovered," id. at 121 (O'Connor, J., concurring) – does not require much explanation. Suffice it to say, the difference in Farrar, $17 million to $1 after ten years of litigation (including two appeals to the Fifth Circuit), indicated that the "litigation accomplished little beyond giving the [plaintiffs] the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated in some unspecified way." Id. at 114 (internal quotation marks omitted).

The second factor – i.e., "the significance of the legal issue on which the plaintiff claims to have prevailed," id. at 121 (O'Connor, J., concurring) – has received different treatment in different courts. Some courts appear to have equated "significance of the legal issue" with "importance of the legal issue." See Maul v. Constan, 23 F.3d 143, 145 (7th Cir. 1994) ("[W]e understand the second Farrar factor to address the legal import of the constitutional claim on which plaintiff prevailed.") [5]; see also Milton v. City of Des Moines, 47 F.3d 944,

_____

(...continued)
Nursing Ctr., Inc., 88 F.3d 1332, 1336 (4th Cir. 1996) (noting that a fee recovery might be justified if the plaintiff's suit served a public purpose); Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994) (noting that the fee award was justified because the plaintiffs prevailed on a significant legal issue and because the litigation served a public purpose).

[5] However, in another Seventh Circuit case, the second factor was defined
(continued...)

-17-

946 (8th Cir. 1995) (noting that "the civil right [the plaintiff] sought to vindicate [in his excessive force claim] was a significant issue contrary to the issue in Farrar "); Piper v. Oliver , 69 F.3d 875, 877 (8th Cir. 1995) (noting that the plaintiff's "right to be free from illegal detention was a significant one"); Jones v. Lockhart , 29 F.3d 422, 424 (8th Cir. 1994) (noting that "vindication of the constitutional right to be free from cruel and unusual punishment is a significant legal issue in contrast to the injury to a business interest alleged in Farrar "); Richard v. City of Harahan , 6 F. Supp. 2d 565, 576 (E.D. La. 1998) (noting that the plaintiff "prevailed on a significant substantive issue – the Fourth Amendment right to be free from unreasonable searches and seizures"); Lucas v. Guyton , 901 F. Supp. 1047, 1055 (D.S.C. 1995) (noting that the plaintiff prevailed on a significant legal issue – i.e., the right to be free from cruel and unusual punishment). Notably, the magistrate judge in the instant case seems to have construed "significance of the legal issue" in this way. See Aplt's App. at 86 (magistrate judge order, filed Jan. 6, 2000) ("Certainly prevailing on a hostile work environment claim, in the abstract, is a significant legal issue.").

---

(...continued)
differently. See Cartwright , 7 F.3d at 110 (characterizing the second factor as looking "not at the relief obtained but to the extent the plaintiff[] succeeded on [his] theory of liability").

-18-

This court, however, has *not* understood "significance of the legal issue" to mean "importance of the legal issue" – a sensible position as otherwise there would be little difference between the second and third O'Connor factors.  In this circuit, "[t]he second factor . . . goes beyond the actual relief awarded [which is the focus of the first factor] to examine the *extent* to which the plaintiff[] succeeded on [his] theory of liability."  Phelps, 120 F.3d at 1132 (emphasis added); see also Brandau, 168 F.3d at 1182 (affirming the district court's decision that the plaintiff succeeded on a significant legal issue because, although she lost her retaliation and constructive discharge claims, she prevailed on her primary claim of sexual harassment).  That the second factor focuses on the extent of success as opposed to the importance of the legal issue is supported by Justice O'Connor's application of the second factor in Farrar.  She stated in her concurrence that

> [the plaintiff] cannot be said to have achieved a true victory.
> Respondent was just one of six defendants and the only one not
> found to have engaged in a conspiracy.  If recovering one dollar from
> the least culpable defendant and nothing from the rest legitimately
> can be labeled a victory – and I doubt that it can – surely it is a
> hollow one.  [The plaintiff] may have won a point, but the game, set,
> and match all went to the defendants.

Farrar, 506 U.S. at 121 (O'Connor, J., concurring).

-19-

As for the third factor – i.e., the accomplishment of a public goal "other than occupying the time and energy of counsel, court, and client," id. at 122 (O'Connor, J., concurring) – again, there has been different treatment in different courts. Some courts appear to read the factor restrictively. See Pino v. Locascio, 101 F.3d 235, 239 (2d Cir. 1996) (noting that "not every tangential ramification of civil rights litigation *ipso facto* confers a benefit on society"); see also id. (concluding that a public purpose was served in Cabrera, 24 F.2d at 372, but only because the plaintiff in that case prevailed on a *"novel* issue of law") (emphasis added); Maul, 23 F.3d at 146 (concluding that a public purpose was not served because the "[p]laintiff brought suit only on his own behalf, alleging only violations of his own rights" and seeking redress for his injuries only).

Other courts, however, have looked at the third factor in more generous terms, concluding that a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct. See, e.g., O'Connor, 117 F.3d at 18 (noting that the plaintiff's victory was not de minimis because, among other things, it provided an incentive to attorneys to represent civil rights litigants such as the plaintiff and it served as a deterrent to future abuses); Muhammad v. Lockhart, 104 F.3d 1069,

-20-

1070 (8th Cir. 1997) (stating that the verdict in favor of the plaintiff "accomplished a public goal, namely, encouraging governments scrupulously to perform their constitutional duties"); Piper , 69 F.3d at 877 (stating that "a public goal had been served by [the plaintiff's] victory in encouraging [the defendants] to refashion their forfeiture procedures to avoid future illegality"); Wilcox v. Reno, 42 F.3d 550, 555 (9th Cir. 1994) (concluding that a public purpose would be served if the plaintiff's suit "achieved . . . tangible results – such as sparking a change in policy or establishing a finding of fact with potential collateral estoppel effects"); Jones , 29 F.3d at 424 (noting that in general "civil rights litigation serves an important public purpose" because " [a] plaintiff bringing a civil rights action does so not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest priority") (internal quotation marks omitted); Cartwright , 7 F.3d at 110-11 (noting that a public purpose is more likely served "[t]he more important the right at stake and the more egregious the violation"; also suggesting that a public purpose would be served if the plaintiff's victory had "external benefits or [a] future deterrent effect") (internal quotation marks omitted); Lucas , 901 F. Supp. at 1055 (concluding that a public purpose was served based on the private attorney general theory).

In this circuit, the broader approach has been adopted, as evidenced by Koopman v. Water District No. 1 of Johnson County, Kansas, 41 F.3d 1417 (10th Cir. 1994), and Brandau v. Kansas, 168 F.3d at 1179. In Koopman, this court discussed the third O'Connor factor and noted that,

> [in Farrar, the plaintiff's] suit could not fairly be said to have any prospect of benefitting anyone other than [himself]. [Here,] Koopman's victory, like Farrar's, did little for him personally, but in sharp contrast to Farrar's, had significant implications in establishing basic rights for public employees holding a similar property interest.

Id. at 1421; see also id. ("Although it is true Koopman received only a nominal award, the present and future employees of the [defendant] benefit by having their rights affirmed."). In Brandau, this court reiterated what it had said in Koopman:

> Although the jury's verdict in this case did not order [the defendant] to change its policies, according to Koopman, circuit precedent does not require the judgment to order a policy change. Nor does precedent require the legal victory to be novel to constitute a significant degree of success.
>
> Instead, Koopman instructs us that what is controlling is Plaintiff's vindication of her civil rights and of important rights of her co-workers . . . .

Brandau, 168 F.3d at 1183. [6]

---

[6]  From Koopman and Brandau, it should be clear that the accomplishment of a public goal need not involve a benefit to the entire general public. Accord Lucas, 901 F. Supp. at 1055 (noting that, "[a]lthough the verdict in this case

(continued...)

-22-

We caution, however, that even as this court has adopted the broader approach the third O'Connor factor should not be construed too liberally. For guidance, we look to Justice O'Connor's application of the third factor in Farrar. There, she noted that the attorney's fee provision "ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory." Farrar, 506 U.S. at 122 (O'Connor, J., concurring). She then suggested that in Farrar, a § 1983 deprivation of liberty and property interest case, no important right had been vindicated because *it was not even clear* what "kind of lawless conduct . . . might be prevented." Id. ("[The] judgment cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lesson because it carries no discernible meaning.").

To conclude, we remand the instant case to the magistrate judge (or the district court) so that he may reconsider the award of attorney's fees in light of this opinion – more specifically, our clarification of the second O'Connor factor. We emphasize that our remand should not be taken as either an endorsement or a

---

(...continued)
might not have a far reaching effect beyond the walls of South Carolina's death row or its prisons, this court believes that the verdict will have a significant effect within those walls").

-23-

condemnation of the original fee award to Mr. Barber. We also emphasize that, on remand, the magistrate judge (or the district court) should not apply the O'Connor factors rigidly: No one factor is necessarily controlling; nor should all three factors necessarily be given equal weight. The bottom line is that all three factors should be given due consideration but ultimately it is within the discretion of the magistrate judge (or the district court) to determine what constitutes a reasonable fee given the particular circumstances.

### IV. MR. BARBER'S CROSS-APPEAL, NO. 00-5033

During the proceedings below, the magistrate judge awarded costs not only to Mr. Barber but also to Williamson. On cross-appeal, Mr. Barber argues that the magistrate judge erred in giving Williamson costs because he, and not Williamson, was the prevailing party. We review for an abuse of discretion. See Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1075 (10th Cir. 1998).

In a Title VII case, a trial court has the power to award costs pursuant to Federal Rule of Civil Procedure 54(d)(1). See Kline v. City of Kansas City, 245 F.3d 707, 709 (8th Cir. 2001) (applying Rule 54(d)(1) in a Title VII case); see also Byers v. Dallas Morning News, Inc., 209 F.3d 419, 430 (5th Cir. 2000) (same); Cherry v. Champion Int'l Corp., 186 F.3d 442, 448 (4th Cir. 1999)

(same); cf. Jane L. v. Bangerter, 61 F.3d 1505, 1517 (10th Cir. 1995) (applying Rule 54(d)(1) with respect to a 42 U.S.C. § 1988 case). Rule 54(d)(1) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Fed. R. Civ. P. 54(d)(1).

As is apparent from the language of Rule 54(d)(1), "the determination of who qualifies as a prevailing party is central to deciding whether costs are available." Wright & Miller, Federal Practice & Procedure § 2667. In general, the litigant who is the prevailing party for purposes of attorney's fees is also the prevailing party for purposes of costs. See 10 Moore's Federal Practice § 54.101[3] (3d ed. 2000) (noting that the "prevailing party" requirement for purposes of costs is generally, but not completely, synonymous with the "prevailing party" requirement in the attorney's fee context); see also Tunison v. Continental Airlines Corp., Inc., 162 F.3d 1187, 1189-90 (D.C. Cir. 1998) (noting that "the 'prevailing party' determination is generally the same in the two contexts" – i.e., Rule 54(d)(1) and 42 U.S.C. § 1988). Under this standard, Mr. Barber was the prevailing party, having been awarded nominal damages. See

Farrar, 506 U.S. at 112 (holding that "a plaintiff who wins nominal damages is a prevailing party under [the attorney's fee statute] § 1988").

In addition, "[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)[(1)]." Wright & Miller, Federal Practice & Procedure, § 2667; see also Head v. Medford, 62 F.3d 351, 354 (D.C. Cir. 1995) ("Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.") (internal quotation marks omitted). Under this standard, Mr. Barber was once again the prevailing party because the district court entered judgment in his favor. See Aplt's App. at 42 (judgment, filed Sept. 23, 1999) ("Pursuant to the unanimous verdict of the jury, the Court hereby enters judgment for the Plaintiff in the amount of $1.00 . . . ."); see also Farrar, 506 U.S. at 112 ("When a court awards nominal damages [to plaintiff], it [does not] enter[] judgment for defendant on the merits . . . .").

In his opinion, the magistrate judge never stated explicitly whom he considered the prevailing party for purposes of Rule 54(d)(1). However, by noting that Mr. Barber had succeeded on one claim and that Williamson had succeeded on two, by describing a Tenth Circuit case as one in which "both parties were prevailing parties," Aplt's App. at 94 (district court order, filed Jan.

21, 2000), and by subsequently stating that Mr. Barber and Williamson alike were entitled to costs, the magistrate judge implicitly believed both to be prevailing parties under Rule 54(d)(1). To the extent that the magistrate judge found both Mr. Barber and Williamson to be prevailing parties under Rule 54(d)(1), he clearly erred. For the reasons stated above, Mr. Barber, and not Williamson, was the prevailing party for purposes of costs.

Having clarified the "prevailing party" status of the respective parties, we vacate the award of costs and remand so that the magistrate judge (or the district court) may reconsider the issue of costs in light of this opinion. We note that, while costs presumptively are awarded to the prevailing party, see Klein v. Grynberg, 44 F.3d 1497, 1506 (10th Cir. 1995); see also Zeran v. Diamond Broadcasting, 203 F.3d 714, 722 (10th Cir. 2000) (noting that a trial court must provide a valid reason for not awarding costs to the prevailing party), a trial court still has the discretion to act under Rule 54(d)(1). See Roberts v. Madigan, 921 F.2d 1047, 1058 (10th Cir. 1990) (noting the "broad discretion" had under Rule 54(d)(1)). For example, in cases in which the prevailing party has been only partially successful, some courts have chosen to apportion costs among the parties or to reduce the size of the prevailing party's award to reflect the partial success. See Wright & Miller, supra, § 2667. Or, in cases in which "neither side entirely

-27-

prevailed, or when both sides prevailed, or when the litigation was thought to be the result of fault on the part of both parties," some courts have denied costs to both sides. Id. § 2668. See, e.g., Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir. 1997) ("In the event of a mixed judgment, however, it is within the discretion of a district court to require each party to bear its own costs."); Testa v. Village of Mundelein, 89 F.3d 443, 447 (7th Cir. 1996) ("Considering the mixed outcome of the civil rights and malicious prosecution claims, the decision requiring each party to bear its own costs is within that discretion."). "[W]here the court exercises its discretion[,] the identification of the prevailing party may [in the end] become so unimportant as to be almost immaterial." Roberts, 921 F.2d at 1058 (internal quotation marks omitted).[7]

---

[7] In Roberts, this court stated that "defendants in this case are not 'prevailing parties' on the issue relating to the Bible in the school library. Thus, this case presents a situation where both parties have 'prevailed' on at least one claim." Roberts, 921 F.2d at 1058. We do not take this statement to mean that both the plaintiff and the defendant were literally "the prevailing party" for purposes of Rule 54(d)(1). See Fed. R. Civ. P. 54(d)(1) (using "*the* prevailing party," not "prevailing parties") (emphasis added); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir. 1997) (noting that "[t]he 'prevailing party' can be either the plaintiff or the defendant"); Commonwealth Oil Ref. Co. v. EEOC, 713 F. Supp. 223, 227 (W.D. Tex. 1989) (stating that "the determination that one party prevailed necessarily entails a determination that the other party lost").

-28-

## V. CONCLUSION

Accordingly, we AFFIRM the judgment of the magistrate judge with respect to the nominal damages award but VACATE and REMAND with respect to the attorney's fee award and the award of costs.