**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 29 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　Plaintiff-Appellee,

v.

DAVID RAND EDDY, a/k/a Randy
Eddy,

　　　Defendant-Appellant.

No. 03-1035
(D. Colo.)
(D.Ct. No. 02-CR-104-N)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

---

　　　After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

　　　[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

David Rand Eddy appeals his thirty-seven month sentence, imposed after he pled guilty to one count each of wire fraud, money laundering, and bankruptcy fraud, in violation of 18 U.S.C. §§ 1343, 1956, and 152(3), respectively.

On appeal, Mr. Eddy argues the district court erred in grouping together his wire fraud and bankruptcy offenses in determining the base offense level for his money laundering conviction pursuant to §2S1.1(a)(1) of the United States Sentencing Guidelines, thereby resulting in a significantly increased sentence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

Mr. Eddy began selling life insurance policies for Provident American Life and Health Insurance Company ("Provident") in 1997 through his closely held Colorado corporation, A.A.V., Inc. Provident paid A.A.V., Inc. on a commission basis for policies Mr. Eddy sold. Provident would pay advanced commissions after Mr. Eddy submitted various documents establishing he sold a new policy. Beginning in March 1998 and continuing through January 1999, Mr. Eddy made a series of false and fraudulent representations and statements to Provident in order to obtain commissions for nonexistent new policies.

After receiving the fraudulently obtained commissions, Mr. Eddy then transferred some of the commission money to his daughter's bank account, which they used to purchase a home in her name in Pueblo West, Colorado.[1] Subsequently, Mr. Eddy assisted his daughter in obtaining a second mortgage on the new home. Thereafter, Mr. Eddy transferred the money from the second mortgage to A.A.V., Inc. as repayment for the fraudulent funds used to purchase the home. In August 1999, Mr. Eddy filed for Chapter 7 bankruptcy and concealed from the bankruptcy trustee, despite questioning, that A.A.V., Inc. contributed money to the purchase of the Pueblo West home.

In February 2002, the government filed a forty-count indictment in the federal district court of Colorado, charging Mr. Eddy with a number of wire fraud, money laundering, and bankruptcy fraud counts. Mr. Eddy subsequently pled guilty to three of those counts.

In determining Mr. Eddy's offense level for his money laundering count, the district court first found the base offense level to be 18. The district court arrived at an offense level of 18 because U.S.S.G. §2S1.1(a)(1) requires the

---

[1] Mr. Eddy arranged virtually all aspects of the purchase and financing of the home; the daughter acted only as a "strawman," purchasing the home for Mr. Eddy.

offense level for money laundering be based on the offense level for the underlying offense, which in this case included the grouping together of both offenses of wire and bankruptcy fraud. For either or both of these two types of fraud, under §2B1.1(a), the base offense level is 6. With respect to special characteristics, under §2B1.1(b)(1)(F), the district court increased the base offense level ten levels because the loss exceeded $120,000.00, and increased it another two levels under §2B1.1(b)(7)(B) because the offense involved a misrepresentation or other fraudulent action during a bankruptcy proceeding, for a total offense level of 18 (*i.e.*, 6+10+2=18).

Pursuant to U.S.S.G. §2S1.1(b)(2)(B), the court then found Mr. Eddy's offense level of 18 warranted a two-point upward adjustment because he was charged under § 1956(a)(1)(B)(i). The district court made another two-point upward adjustment finding the offense involved sophisticated laundering pursuant to §2S1.1(b)(3). Finally, the district court found Mr. Eddy entitled to a three-point downward adjustment for acceptance of responsibility. Therefore, the district court found his offense level for money laundering and total offense level to be 19.[2] With Mr. Eddy's criminal history category of I and offense level of 19,

---

[2] The district court used the money laundering offense level as Mr. Eddy's total offense level because the offense grouping rules required the district court to apply the offense level for the most serious of the counts in the group. U.S.S.G. §3D1.3 (2001).

his sentencing guideline range was thirty to thirty-seven months. The district court subsequently sentenced Mr. Eddy to thirty-seven months. Mr. Eddy concedes he never objected to the district court's offense level calculations.

Mr. Eddy now argues the district court erred in using his unrelated bankruptcy fraud conduct to enhance the base offense level of his money laundering count. Mr. Eddy contends the bankruptcy conduct should not be considered because the money laundering guideline, U.S.S.G. §2S1.1(a)(1) (2001), directs a sentencing court to consider only the offense from which the laundered funds were "derived," and the misappropriated funds were not "derived" from his misrepresentations at his bankruptcy proceeding.

Because Mr. Eddy did not object in the district court to his sentence calculation, we review his sentence for plain error. *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir. 1994). Under this standard, "we will only reverse ... in an exceptional circumstance – one where the error was patently plainly erroneous and prejudicial and fundamental injustice would otherwise occur." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1227 (10th Cir. 2001) (quotation marks and citation omitted).

Mr. Eddy's argument is without merit because arguably even if the bankruptcy offense was not considered as one of the underlying offenses, the result would be the same. First, in calculating the base offense level for a money laundering count, U.S.S.G. §2S1.1(a)(1) directs a sentencing court to apply "[t]he offense level for the underlying offense from which the laundered funds were derived." In Mr. Eddy's case, one of the underlying offenses is wire fraud, governed by U.S.S.G. §2B1.1, which, when applied alone, would result in the same offense level as when grouped with the bankruptcy fraud offense. *See* U.S.S.G. §2B1.1(a). This is because a criminal who has committed an offense under §2B1.1 automatically receives a minimum offense level of 6. U.S.S.G. §2B1.1(a).

Next, in determining Mr. Eddy's sentence, a sentencing court applies U.S.S.G. §2B1.1 in its entirety. *See* U.S.S.G. §1B1.5(a) (2001) ("A cross reference (an instruction to apply another offense guideline) refers to the *entire offense guideline* (*i.e.*, the base offense level, specific offense characteristics, cross references, and special instructions)." (emphasis added).) Thus, as pointed out in §1B1.5, the offense level can be raised based on whether special offense characteristics, cross references, or special instructions are applicable for a particular crime. Specific offense characteristics are determined by relevant

conduct, defined as:

> all acts and omissions committed ... induced, procured or wilfully caused by the defendant ... that occurred during the commission of the offense for conviction ... or in the course of attempting to avoid detection or responsibility for that offense ... [and] solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions [as referenced] above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S.S.G. §1B1.3(a)(1)(A) and (a)(2).

In Mr. Eddy's case, under §2B1.1(b)(1)(F), as a special offense characteristic, the district court properly added ten levels because Mr. Eddy's crime resulted in a loss exceeding $120,000. In the same vein, as a special offense characteristic, the district court also added an enhancement of two additional levels pursuant to §2B1.1(b)(7)(B), because Mr. Eddy's crime involved "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding," specifically, his concealment of the fraudulently obtained wire transfer funds from the bankruptcy trustee during his Chapter 7 bankruptcy proceeding.[3] Although the fraudulently obtained funds were not directly obtained via this bankruptcy proceeding, Mr. Eddy's bankruptcy misrepresentation directly

---

[3] Even though, Mr. Eddy's enhancements for a loss exceeding $120,000 and for misrepresentation during a bankruptcy proceeding both fall under the special offense characteristics portion of U.S.S.G. §2B1.1, Mr. Eddy does not contend the monetary loss enhancement was in error.

related to his efforts in concealing these funds and, therefore, constituted part of his wire fraud scheme, regardless of whether the bankruptcy offense is considered.

Thus, under our plain error review and the circumstances of this case, we conclude the district court's calculation of Mr. Eddy's total offense level was not patently or plainly erroneous, nor did the requisite prejudicial or fundamental injustice result therefrom.

The judgment of the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge